IDOL *v.* STATE OF INDIANA.

[No. 29,105. Filed May 14, 1954.]

308

*Alembert W. Brayton,* of Indianapolis, for appellant.

*Edwin K. Steers,* Attorney General, and *Owen S. Boling* and *Richard M. Givan,* Deputy Attorneys General, for appellee.

DRAPER, C. J.—The appellant was charged by way of a grand jury indictment in three counts with the offenses of (1) involuntary manslaughter, (2) reckless homicide and (3) leaving the scene of an accident. He was found guilty on counts two and three. His motion for new trial was overruled and he prosecutes this appeal as a pauper.

The evidence discloses that on January 26, 1952, Mary Throckmorton and another woman left a tavern in downtown Indianapolis at about 8:00 P. M. intending to cross the street. It was somewhat dark. They left the west curb of the street at a point other than an intersection and walked between two automobiles

parked at the curb directly out into the street. They were struck by an automobile driven by the appellant. There is some conflict as to whether they were struck and fatally injured at a point about ten feet from the curb, or whether they had proceeded somewhat further and were momentarily standing in the street.

The only witness who testified on the subject testified without contradiction that the appellant was driving somewhat faster than forty miles per hour. He was "going south on the right hand side of the white line, and he wasn't on the white line and neither was he in the middle. He was just about the way he should be." The car "was about half way between the parked cars on Virginia Street, and the middle of Virginia." Traffic was not especially heavy, but there were cars going in both directions on Virginia Avenue. The appellant did not testify.

In *Beeman* v. *State* (1953), 232 Ind. 683, 115 N. E. 2d 919, we lately had occasion to consider the sufficiency of the evidence to sustain a conviction of reckless homicide. Applying the rules there stated, it seems apparent that the evidence here falls far short of establishing the offense. There is no evidence that the appellant voluntarily, with knowledge of existing conditions, did an improper act or refrained from doing a proper one under circumstances where his action or failure to act evinced an entire absence of any care or a heedless indifference of the results which might follow. It cannot be found or inferred from the evidence that he made a conscious choice of a course of action which injured another, knowing of the danger to the other, or knowing facts which would disclose the danger to any reasonable man.

Negligent conduct without more will not support a conviction in these cases. There is no evidence whatever

that the appellant knew, or could have known, that the women would step out from between two parked cars in the darkness at a place other than an intersection, directly into the path of his automobile, or to show that he did or refrained from doing anything after he discovered their presence which would evince an abandonment of any care or a heedless indifference of the consequences. Furthermore, it could not be found or logically inferred from the evidence here that reckless misconduct on the part of the appellant proximately caused the death of the deceased. *Turrell* v. *State* (1943), 221 Ind. 662, 51 N. E. 2d 359; *State* v. *Beckman* (1941), 219 Ind. 176, 37 N. E. 2d 531. And see *Howell* v. *State* (1928), 200 Ind. 345, 163 N. E. 492; *Dunville* v. *State* (1919), 188 Ind. 373, 123 N. E. 689. The Attorney General, while not confessing error, made no effort to argue that the evidence was sufficient to sustain the verdict of guilty on count two of the indictment. We think the evidence failed to do so.

Following the accident the appellant stopped momentarily, then drove away without offering or rendering assistance of any kind, and without making his identity known to anyone in any way. He was living in a fraternity house at 733 North Pennsylvania Street in the City of Indianapolis. A vacant three stall garage was located in the rear thereof on the alley. The appellant put his automobile in the center stall of that garage. This he did after talking with one Roach, the house manager of the fraternity house, who had charge of the rental of the garage, and who suggested that the appellant put the automobile in the garage. The following afternoon, January 27th, two police officers who were attempting to locate the automobile involved in this matter, came to the garage. They looked through the screen on the garage doors and saw what they believed to be the

automobile they were looking for. By placing aside a covering of a previously made opening in the screen in the garage door, one of them reached his hand in and unlatched the door and they entered the garage and obtained a description of the automobile, and the information thus obtained was relayed to headquarters. At the time they entered the garage and obtained such information the appellant had not been arrested and the police officers had no search warrant and they had no permission from anyone to enter the garage. Under directions from police headquarters, after obtaining the information aforesaid, the officers went to the fraternity house and learned from Roach that the garage belonged to the fraternity. They then asked his permission to enter the garage and it was granted. Thereupon they entered the garage without the knowledge or consent of the appellant, before he was arrested or charged with any offense and without any search warrant. They examined the automobile, took pictures of it, removed a strand of hair and of cloth from it, removed paint specimens, found and photographed a lubrication tag under the hood which bore appellant's name, and otherwise examined the automobile, and finally towed it to the garage at police headquarters. It was later returned to the appellant. The police officers were permitted to testify concerning what they saw and found. An analysis of the hair and a microscopic examination of the strand of cloth and the paint was made and these items, with others, including photographs taken of the car and the lubrication tag, were introduced in evidence for the purpose of connecting the appellant with the commission of the offense.

The appellant urges error in the overruling of his motion to suppress any and all evidence obtained by entering the garage and any and all tests or experiments or articles or testimony concerning any facts

or matters obtained or learned by virtue of the entry of the garage and the examination and removal of the automobile, it being appellant's contention that the search and seizure was violative of Art. 1, §11 of the Const. of Indiana.[1] The above mentioned items of evidence were separately objected to for the same reason as they were offered in evidence, but were admitted over said objections.

Article I, §11 of our Constitution must receive a liberal construction in its application to guarantee the people against unreasonable search and seizure. *Flum* v. *State* 1923), 193 Ind. 585, 590, 141 N. E. 353; *Wallace* v. *State* (1927), 199 Ind. 317, 157 N. E. 657; *Dalton* v. *State* (1952), 230 Ind. 626, 105 N. E. 2d 509; *Boyd* v. *United States* (1886), 116 U. S. 616, 635, 29 L. Ed. 746.

An automobile is an "effect" within the constitutional provision. *Robinson* v. *State* (1925), 197 Ind. 144, 149 N. E. 891; *Dalton* v. *State, supra.* The right of the people to be secure against unreasonable searches and seizures is not limited to dwelling houses. It may extend to other structures, including a garage. *United States* v. *Slusser* (1921), 270 Fed. 818; *Boyd* v. *State* (1949), 206 Miss. 573, 40 So. 2d 303; *Taylor* v. *United States* (1932), 286 U. S. 1, 76 L. Ed. 951, 52 S. Ct. 466; 79 C. J. S., Searches and Seizures, §66 (f).

The evidence discloses that the automobile in this case was owned by the appellant. In the light of

---

1. Unreasonable search of seizure.—The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure, shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or thing to be seized.

uncontradicted evidence showing his use of the garage with the permission of Roach, who had charge of it, the garage must be considered to be such a part of the appellant's premises as to fall within the constitutional immunity from unreasonable search and seizure. *Shepherd* v. *State* (1928), 200 Ind. 405, 164 N. E. 276.

There is no evidence that the appellant consented or authorized Roach to consent to the entry of the garage by the officers for any purpose. The law will not imply such authorization. If such was in fact given by the appellant, it was incumbent upon the state to prove it. *Dalton* v. *State, supra.*

It is true that in determining the question of the reasonableness of a search or seizure a different test is applied depending upon whether an automobile or a stationary structure is involved. The reasonableness of searches of motor vehicles depends largely upon the facts and circumstances of each particular case. This is necessarily so because of the ease and rapidity with which motor vehicles may be moved from place to place, and the consequent impossibility of procuring warrants in all cases in time to search such vehicles. *Pettit* v. *State* (1935), 207 Ind. 478, 188 N. E. 784; 79 C. J. S., Searches and Seizures, §66 (h). Thus in *Pettit* v. *State, supra,* this court said that:

"(A) search of an automobile, if made upon probable cause, may not be unreasonable though made without a warrant, and it is not essential that such search shall have been made to effect, or as incidental to, a lawful arrest. This rule usually has been applied to cases involving a search made under circumstances which, connected with the facts constituting probable cause, might tend

to render the search impossible or impracticable if delayed until a proper warrant is secured."

In the case just referred to the police officers who had arrested the defendant had probable cause for believing that he had committed a robbery and they also had probable cause for believing he had used his automobile in the commission of it. They arrested the defendant, and then learned that the automobile was in a garage on the premises of appellant's aunt. Whether the defendant had placed it there with the knowledge and permission of his aunt does not appear. The officers then took the defendant with them to the garage. Upon searching the automobile there they procured the items of evidence sought to be suppressed. The evidence was held to be admissible.

That case differs from the case at bar in many respects. In this case the appellant was not arrested until after the garage had been entered and his automobile had been thoroughly searched and the car itself removed by the police. There is no evidence here that the police officers had probable cause for believing that the appellant had committed a felony, nor for believing that the automobile had been involved in the commission of a felony until after the search had been made. Neither were the circumstances such as would justify the officers in believing that a search might be rendered impossible or impracticable if delayed until a warrant was obtained. As pointed out in *Dearing* v. *State of Indiana* (1948), 226 Ind. 273, 79 N. E. 2d 535, a search without a search warrant is not justified because of the existence of facts which would justify the issuance of a search warrant. In this case, as in the case just referred to, the search could not be justified as an incident of the arrest because no arrest had been made, and when it was made it was

made upon the basis of what was discovered by the search.

The evidence discloses beyond question that there was ample time and opportunity for the obtaining of a search warrant. It appears probable that the officers thought the consent of Roach was sufficient to justify them in entering the garage and searching the vehicle. We conclude otherwise and hold that the search was violative of Art. I, §11 of our Constitution.

Other evidence which tended to identify the appellant as the driver of the automobile involved in this case was admitted in evidence, but since the jury's decision was based upon evidence which should not have been admitted, and since we have no way of knowing what conclusion the jury might have reached had such evidence not been considered, the admission of the evidence unlawfully obtained constitutes reversible error. *Dearing* v. *State of Indiana, supra.*

The record discloses that all available evidence was thoroughly developed at the trial of this case, and since, under the surrounding facts and circumstances a conviction of the appellant on the second count of the indictment could not be sustained in any event, we deem it unnecessary to consider the sufficiency of the second count of the indictment to withstand the motion to quash. Other questions raised by the appellant would not likely arise on a retrial of the appellant on the third count of the indictment, and it is, therefore, unnecessary to consider them in this opinion.

For the reasons above stated, the judgment is reversed and the cause is remanded to the trial court for further proceedings.

Bobbitt, Flanagan, Emmert & Gilkison, JJ., concur.

NOTE.—Reported in 119 N. E. 2d 428.